1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LINDA SUE LONG,                          No.  2:21-cv-00752 AC

12                     Plaintiff,

13        v.                                   ORDER

14    KILOLO KIJAKAZI, Acting
      Commissioner of Social Security,
15
                      Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") denying her application for Supplemental Security Income ("SSI") under

20    Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that

21    follow, the court will grant plaintiff's motion for summary judgment and deny the

22    Commissioner's cross-motion for summary judgment.

23                              I.  PROCEDURAL BACKGROUND

24         Plaintiff applied for supplemental security income on June 17, 2017.  Administrative

25

26    ───────────────
      [1]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept.
      of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003)
27    ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of
      benefits for aged, blind, or disabled individuals, including children, whose income and assets fall
28    below specified levels . . .").

                                            1

Record ("AR") 248-256.[2]  Plaintiff alleged the disability onset date was June 9, 2017.  Id.  The

application was disapproved initially (AR 151-160), and on reconsideration (AR 162-175).  On

January 3, 2020, ALJ David M. Blume presided over hearings on plaintiff's challenge to the

disapprovals.  AR 107-129 (transcript).  Plaintiff was present and testified at the hearing.  AR

107.  Plaintiff was not represented by counsel.  Id.  Megan Cameron, a vocational expert, also

testified at the hearing.  Id.

On March 2, 2020, the ALJ issued an unfavorable decision, finding plaintiff "not

disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).

AR 52-61 (decision), 62-65 (exhibits).  On September 12, 2020, the Appeals Council denied

plaintiff's request for review, leaving the ALJ's decision as the final decision of the

Commissioner of Social Security.  AR 11-14 (decision).

Plaintiff filed this action on April 26, 2021.  ECF No. 1; see 42 U.S.C. §§ 405(g),

1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 7, 9.  The

parties' cross-motions for summary judgment, based upon the Administrative Record filed by the

Commissioner, have been fully briefed.  ECF Nos. 19 (plaintiff's summary judgment motion), 20

(Commissioner's summary judgment motion).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1971, and accordingly was 46 years old when she filed her

application.  AR 269.  Plaintiff has a tenth-grade education.  AR 274.  Plaintiff has a work history

as a cleaner, warehouse code card person, fast food worker, and recycling center employee.  AR

281.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is

supported by substantial evidence and if the Commissioner applied the correct legal standards."

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

---

[2]  The AR is electronically filed in OCR format at ECF No. 11-2 (AR 3-717).

1    Substantial evidence is "more than a mere scintilla," but "may be less than a

2    preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such

3    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

4    Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While

5    inferences from the record can constitute substantial evidence, only those 'reasonably drawn from

6    the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation

7    omitted).

8        Although this court cannot substitute its discretion for that of the Commissioner, the court

9    nonetheless must review the record as a whole, "weighing both the evidence that supports and the

10   evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,

11   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

12   court must consider both evidence that supports and evidence that detracts from the ALJ's

13   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

14       "The ALJ is responsible for determining credibility, resolving conflicts in medical

15   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

16   Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

17   which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

18   278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

19   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

20   v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

21   2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

22   evidence that the ALJ did not discuss").

23       The court will not reverse the Commissioner's decision if it is based on harmless error,

24   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

25   ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

26   2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

27   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

28   ////

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a.  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

4

engage in work that exists in significant numbers in the national economy." <u>Hill v. Astrue</u>, 698

F.3d 1153, 1161 (9th Cir. 2012); <u>Bowen</u>, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since June 27, 2017, the application date (20 CFR 416.971 *et seq*.).

> 2. [Step 2] The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, obesity, left calcaneal spur, and COPD (20 CFR 416.920(c)).

> 3. [Step 3]   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can perform occasional postural activities but she cannot climb ladders, ropes or scaffolds. She must avoid fumes, gases, dusts, and hazards.

> 5. [Step 4]  The claimant is unable to perform any past relevant work (20 CFR 416.965).

> 6. [Step 5]  The claimant was born [in 1971] and was 46 years old, which is defined as a  younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

> 7. [Step 5, continued]  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

> 8. [Step 5, continued]  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).

> 10. The claimant has not been under a disability, as defined in the Social Security Act, since June 27, 2017, the date the application was filed (20 CFR 416.920(g)).

AR 54-61.

1    As noted, the ALJ concluded that plaintiff was "not disabled" under

2  Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 61.

3                                VI.   ANALYSIS

4    Plaintiff alleges the ALJ erred by (1) failing to fully develop the record and conduct a full

5  and fair inquiry on behalf of the unrepresented plaintiff; and by (2) finding that plaintiff's urinary

6  incontinence was a non-severe impairment at step two, and accordingly assessing an RFC that

7  fails to include limitations related to that impairment.  ECF No. 19 at 1-2.

8    A.  The ALJ Failed to Develop the Record

9    Plaintiff alleges the ALJ erred by failing to develop the record in three ways: (1) the ALJ

10  did not inquire into the details of the unrepresented plaintiff's alleged urinary incontinence; (2)

11  the ALJ did not give plaintiff an opportunity to cross-examine the vocational expert; and (3) the

12  ALJ did not develop ambiguous evidence regarding plaintiff's mental impairments.  ECF No. 19

13  at 9-12.  Because the court agrees the record was not fully developed and remand is necessary for

14  such development, the court does not reach plaintiff's second claim of step two error.

15    In all Social Security cases, the ALJ has a "special duty to fully and fairly develop the

16  record and to assure that the claimant's interests are considered."  Smolen v. Chater, 80 F.3d

17  1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The

18  duty exists even in cases where the claimant is represented by counsel, though where a plaintiff is

19  unrepresented "the ALJ must be especially diligent in exploring for all the relevant facts."

20  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  The duty of the ALJ to "conduct an

21  appropriate inquiry" is triggered by "ambiguous evidence, or the ALJ's own finding that the

22  record is inadequate to allow for proper evaluation of the evidence."  Id. (citing Smolen, 80 F.3d

23  at 1288).  The Ninth Circuit has explained that an "ALJ may discharge this duty in several ways,

24  including subpoenaing the claimant's physicians, submitting questions to the claimant's

25  physicians, continuing the hearing, or keeping the record open after the hearing to allow

26  supplementation of the record."  Tonapetyan, 242 F.3d at 1150 (citing Tidwell v. Apfel, 161 F.3d

27  599, 602 (9th Cir. 1998)); Smolen, 80 F.3d at 1288.

28  ////

1
       *1.  Urinary Incontinence Claim*

2
   Plaintiff testified at the January 23, 2020 administrative hearing that she had a leaky

3
bladder.  AR 122.  The relevant testimony proceeded as follows:

4
     Q [ALJ]:  All right. So low back, shoulders, pelvic area, hands.

5
     A [plaintiff]:  Yeah.

6
     Q:  Does that does that cover all the main problems?

7
     A:  Yeah. And I have a leaky bladder. It's pretty bad and the
     medication that I'm on makes it even worse.

8

9
     Q:  You had surgery for that; didn't you?

10
     A:  Yes, I did back in 2003 with Dr. Flick -- Frichler [phonetic] in
     Chico.

11
     Q:  All right. So you have incontinence with the bladder?

12
     A:  Yes.

13
     Q:  Do you have to wear garments – like undergarments for that er –

14
     A What's that?

15
     Q Do you have to wear like --

16
     A Yes.  I always have to wear something.

17
     Q Okay. And let's see. Oh, COPC. Do you have – do you have
     shortness of breath as well?

18

19
AR 122.

20
   Plaintiff had undergone bladder sling surgery in 2003.  AR 67, 390, 472, 593, 602.

21
Records from monthly pain management clinic visits dated August 29, 2016; October 26, 2016;

22
November 16, 2016; December 15, 2016; January 13, 2017; February 17, 2017; March 17, 2017;

23
April 18, 2017; May 18, 2017; June 16, 2017; July 18, 2017; September 11, 2017; October 10,

24
2017; November 13, 201; and December 12, 2017 all noted with respect to genitourinary system

25
problems: "Normal: no bowel or bladder incontinence."  AR 541, 545, 549, 553, 557, 561, 564,

26
567, 571, 574, 578, 582, 586, 589, 593.  A January 30, 2017 record from a gynecological visit

27
indicated that plaintiff denied incontinence.  AR 391, 473.

28
   On September 23, 2016, plaintiff underwent a hernia repair and gallbladder removal.  AR

1    525.  A March 2017 imaging of the pelvis revealed multiple large leiomyoma [benign smooth

2    muscle tumor; fibroid].  AR 423.  Plaintiff underwent a hysterectomy in July 2017.  AR 55, 437.

3    There was a finding of no bladder injury.  AR 437.  A December 2017 record noted that plaintiff

4    reported "no more pelvic pain."  AR 602.  July 30, 2019 imaging revealed that the urinary bladder

5    was unremarkable.  AR 700.

6         Plaintiff submitted post-decision evidence to the Appeals Council showing she was

7    hospitalized on March 7, 2020 and discharged on March 9, 2020.  AR 39.  A March 7, 2020,

8    record noted a final impression of: 1. Abdominal pain, generalized acute; 2.  Pancreatic mass

9    acute.  AR 22.  There was a diagnosis of a pancreatic mass, acute abdominal pain, and acute

10   urinary obstruction.  AR 22.  Medical notes state that there was moderate to marked distention of

11   the urinary bladder with the dome of 2.7 cm caudal of the level of the umbilicus.  AR 20.  The

12   March 9, 2020, discharge summary specified diagnoses of pancreatic mass, constipation, bladder

13   distension, and acute bronchitis as resolved hospital problem.  AR 39-40.  With respect to active

14   hospital problems, the discharge summary noted chronic back pain and COPD.  AR 39.

15        In his opinion, the ALJ considered plaintiff's allegation of bladder incontinence but did

16   not find that this was a severe impairment for purposes of step two.  AR 55.  The entirety of the

17   ALJ's treatment of this issue in his opinion reads: "Although the claimant alleges bladder

18   incontinence, the record is devoid of reported symptoms, clinical or laboratory findings, or

19   treatment of incontinence (Ex. B1F-B9F).  Instead, she specifically denied incontinence (Ex.

20   B6F/54)."  AR 55.  The reference to specific denial of incontinence refers to the August 29, 2016

21   pain management note from the routine review of systems that states, in relevant part, "Normal:

22   now bowel or bladder incontinence[.]"  AR 593.

23        The ALJ did not properly develop the record with respect to plaintiff's incontinence.

24   Plaintiff's disability claim alleged "leaky bladder" as one of the conditions limiting her ability to

25   work.  AR 273.  When the ALJ asked her whether he had named all her major conditions at the

26   hearing, she specifically added leaky bladder.  AR 122.  The ALJ asked plaintiff only if she wore

27   undergarments for incontinence; he did not ask any questions about how the leaky bladder

28   symptoms limit plaintiff's ability to work, such as whether it would require her to take additional

breaks during the day or miss work.  Plaintiff testified that she could work only "[m]aybe three or four hours" in an eight-hour work day but the ALJ did not ask which physical problems contribute to her alleged ability to work only three or hour hours a day.  AR 125.  Plaintiff also testified she would be absent from work once or twice a week, but the ALJ did not ask follow-up questions.  AR 126.  While the court recognizes that the pain management notes regularly report no incontinence, plaintiff has an extensive history of abdominal problems, including significant bladder surgery.  Particularly considering plaintiff's unrepresented status, the ALJ was required to develop the record regarding plaintiff's alleged incontinence and its impact on her ability to sustain full time employment.  The error is not harmless because plaintiff's additional testimony, physician subpoenas, or even an additional consultative examination could have clarified the impact of plaintiff's leaky bladder on her need for breaks or potential absences from work, potentially altering her RFC.  The court finds the ALJ erred in flailing to develop the record.

### 2. Opportunity to Question the Vocational Expert

The ALJ further erred in failing to give the plaintiff a specific opportunity to question the vocational expert.  A plaintiff cannot be denied the opportunity to cross examine or rebut testimony.  Burkhart v. Bowen, 856 F.2d 1335, 1341 (9th Cir. 1988) (finding that an ALJ who speculated as to the work plaintiff could perform without consulting a VE, effectively deprived plaintiff of an opportunity to cross-examine a witness or rebut testimony); Labato v. Astrue, 2010 WL 2803967, 5 (C.D. Cal. July 15, 2010) (finding plaintiff was deprived of opportunity to cross-examine or rebut testimony when interrogatories were sent to the VE).

Here, the ALJ asked the unrepresented plaintiff at the end of the hearing, "Any other questions?"  AR 128.  Plaintiff replied, "no."  Id.  The ALJ did not explain the role of the VE or ask plaintiff if she had any questions for the VE.  Particularly given the ALJ's failure to substantively develop the record, this error cannot be considered harmless.  Plaintiff may have asked questions regarding her urinary incontinence or other questions impacting her RFC; there is no way to know because the plaintiff was not provided an opportunity to cross examine the vocational expert.  The plaintiff, who was unrepresented, cannot have been expected to interpret the ALJ's open-ended invitation to ask "any other questions" at the end of the hearing as an

1    opportunity to cross-examine the vocational expert.  The ALJ erred in this regard.

2                          *3.  Mental Health Claims*

3             The ALJ did not properly develop the record with respect to plaintiff's mental health

4    claims.  The evidence in the record regarding plaintiff's asserted disabling conditions of anxiety

5    and depression (AR 313, 360) is decidedly mixed.  In a third-party function report, the plaintiff's

6    father noted that his daughter does not handle stress or changes well and seems to be depressed

7    more.  AR 334.  He also reported plaintiff was fired or laid off from a job for failure to get along

8    with others, reporting that she "gets very mad" when customers take out frustration on her.  Id.

9    Plaintiff reported that she had received treatment for a mental condition from Ross Tye, M.D. and

10   Associates between 2014 and 2017.  AR 276.  However, there is no indication in the evidence of

11   record that these medical records were requested or received; the only record referencing Dr. Tye

12   is an imaging referral for a bone spur.  AR 457.  There are instances in the medical record where

13   plaintiff complains of anxiety and depression; a history of anxiety, depression, and insomnia is

14   noted; or she presents as somewhat anxious.  AR 35, 531, 599.  At her hearing, plaintiff testified

15   that she cannot stand being inside when the space is small; that her mental facility and emotions

16   are out of control right now; but that she is not getting treated for mental health.  AR 124-125.

17   She also testified she was in jail for a couple of days in December of 2019 because she has been

18   going through menopause and was provoked, causing some sort of an angry outburst.  AR 114.

19   On the other hand, there are multiple instances in the medical record in which plaintiff denied

20   mental health problems and where limited psychological exams were normal.  AR 396, 402, 419,

21   462, 470, 478, 484, 502, 542, 601, 646, 653, 657, 662, 667, 671, 675, 679, 683, 688, 692.

22            In the decision, the ALJ dismissed plaintiff's mental health claims as nonsevere, finding

23   that there were few complaints or objective findings of mental health symptoms in the record,

24   there was no diagnosis of a medically determinable mental impairment, and the State agency non-

25   examining psychological consultant found no evidence of a mental impairment.  AR 56, 169.

26   Given the conflicting evidence in the record and the hearing testimony, it was not enough for the

27   ALJ to simply rely on the conclusion of a non-examining consultant who reviewed the record and

28   made no substantive findings.  AR 169.  This is a circumstance in which the ALJ needed to

develop the record by subpoenaing the medical records from Ross Tye, M.D. and Associates and ordering a consultative examination of plaintiff.  The ALJ erred by failing to develop the record regarding plaintiff's mental health.

B. <u>Remand for Further Consideration is Necessary</u>

As discussed above, the ALJ erred by failing to develop the record with respect to plaintiff's urinary incontinence and mental health, and by failing to give plaintiff an opportunity to question the vocational expert.  The court cannot address plaintiff's claim of error at step two because correction of the errors identified in this order will necessarily impact the step two analysis.  The undersigned agrees with plaintiff that the ALJ's errors identified above are harmful and remand for further proceedings by the Commissioner is necessary.  An error is harmful when it has some consequence on the ultimate non-disability determination.  <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ's error in this matter was harmful; correcting the errors may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act.  <u>See</u> <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004).  Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20), is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings consistent with this order; and

1        4.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

2        SO ORDERED.

3    DATED: August 11, 2022

4    
ALLISON CLAIRE
5    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28